*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JAVON ANTHONY JOHNSON,

        Defendant-Appellant.

UNPUBLISHED
November 12, 2024
1:35 PM

No. 368067
Wayne Circuit Court
LC No. 20-000266-01-FH

Before: JANSEN, P.J., and RICK and PATEL, JJ.

PER CURIAM.

Defendant appeals as of right his bench trial convictions for one count of felonious assault, MCL 750.82, and one count of carrying a firearm during the commission of a felony (felony-firearm), MCL 750.227b.[1] Defendant was sentenced to 68 days in jail for the felonious assault conviction, and two years' imprisonment for the felony-firearm conviction. We affirm.

## I. FACTUAL BACKGROUND

This case arises out of defendant's alleged pursuit of complainant, Charles Pinner, at a car show in Detroit while defendant was armed. On June 22, 2019, complainant attended a car show at a car wash with his girlfriend, Tiffany Bell. About an hour after complainant arrived, he saw two trucks going through the car wash, and return to the area 10 minutes later. The two trucks stopped in the middle of the street for a few minutes before approximately eight men emerged from the vehicles. Complainant was about 30 feet away. Complainant recognized defendant and

---

[1] As an initial matter, defendant was acquitted of one count of felonious assault and one count of felony-firearm related to Tiffany Bell, who was present during the subject incident. Defendant was jointly charged and tried with Joseph Marion Grove, who was acquitted of one count of felonious assault and one count of felony-firearm related to complainant, Charles Pinner. Further details will be provided herein.

codefendant Joseph Marion Grove as two of the men from the trucks. Defendant and codefendant Grove were both armed with black pistols as they exited from separate vehicles.

As complainant was standing in front of his car, he saw defendant and codefendant Grove individually fire their respective firearms in the air immediately after they got out of the trucks. Complainant was scared, but he did not believe defendant or codefendant Grove initially intended to fire in his direction, only that the two were attempting to frighten complainant. After the first gunshots were fired by defendant and codefendant Grove, defendant approached complainant while codefendant Grove walked towards Bell. Complainant ran away, with defendant pursuing him while armed and filming the chase for three blocks. One of complainant's friends saw what transpired, and complainant got into a car with him by a gas station. Complainant testified that he contacted emergency services four times after he went home, which was about an hour after the incident, but law enforcement refused to act, so complainant and Bell visited the police station to make a report.

Complainant was aware that defendant posted a video on his personal social media page the day of the incident, which allegedly depicted defendant pursuing complainant and saying, "Lame a** n***** left this b****," presumably referring to complainant leaving Bell by his car. Defendant posted a second video to his personal social media, which was "live," with defendant purportedly stating, "Man, I was sick, I couldn't catch his a**," "I'm too fat to be chasing him . . . . I should have popped his a**, I should have popped his little b**** a**," and "I swear, I was sick as hell, I couldn't even catch up to him." Complainant provided that, in the second video, "[defendant] had the same gun he chasing me with and he's in the car and he is doing something, about to go somewhere[,]" but defendant was filming in a different vehicle than the truck from the car show. The second video allegedly depicted defendant in a white Corvette, with a firearm.

Defendant testified that while he and complainant were involved in a verbal altercation at the car show, and he proceeded to pursue complainant on foot, defendant was not armed at any point during the incident. Detective Feleshia Gambril of the Detroit Police Department testified on behalf of defendant, providing that she did not discover any 911 call transcripts pertaining to the incident during her investigation, or reports of gun shots in the area. Following a two-day bench trial, defendant was convicted of felonious assault and felony-firearm, and sentenced as provided earlier. This appeal ensued.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that he was deprived of the assistance of counsel during a critical portion of the lower court proceedings, thus creating a presumption of ineffectiveness. Defendant further argues that defense counsel failed to subject the prosecution's case to "meaningful adversarial testing" because of her inadequate preparation before trial, and that defense counsel's numerous deficiencies prejudiced the outcome of the proceedings. We disagree.

To preserve an ineffective assistance of counsel claim for appellate review, a defendant must move for a new trial or request an evidentiary hearing in the trial court, *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012), or file with this Court a motion to remand to the trial

court for a *Ginther*[2] hearing, *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020). Defendant preserved this issue by raising it in his motion for a new trial, which was denied.

"Generally, whether a defendant had the effective assistance of counsel is a mixed question of fact and constitutional law." *Heft*, 299 Mich at 80 (quotation marks and citation omitted). "This Court reviews findings of fact for clear error and questions of law de novo." *Id*. Clear error exists if the reviewing court "is left with a definite and firm conviction that the trial court made a mistake." *Abcumby-Blair*, 335 Mich App at 227-228 (quotation marks and citation omitted). However, because the trial court did not hold an evidentiary hearing before ruling on defendant's motion, this Court's review is limited to mistakes apparent on the record. *People v Riley (After Remand)*, 468 Mich 135, 139; 659 NW2d 611 (2003). "This Court reviews for an abuse of discretion a trial court's decision on a motion for a new trial." *People v Rogers*, 335 Mich App 172, 191; 966 NW2d 181 (2020). "A trial court abuses its discretion when it selects an outcome that falls outside the range of reasonable outcomes." *Id*.

The United States Constitution and Michigan Constitution guarantee a defendant the right to effective assistance of counsel. US Const, Am VI; Const 1963, art 1, § 20. To prevail on a claim of ineffective assistance under the standard provided in *Strickland v Washington*, 466 US 668, 690-691; 104 S Ct 2052; 80 L Ed 2d 674 (1984), the defendant must establish "(1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). However, in *United States v Cronic*, 466 US 648, 658; 104 S Ct 2039; 80 L Ed 2d 657 (1984), the United States Supreme Court delineated "three rare situations in which the attorney's performance is so deficient that prejudice is presumed." *People v Frazier*, 478 Mich 231, 242; 733 NW2d 713 (2007). The first circumstance is when a defendant is completely denied counsel at a critical stage of trial by counsel being "totally absent," or when counsel is "prevented from assisting the accused." *Cronic*, 466 US at 659 n 25. The second circumstance transpires when counsel "entirely fails to subject the prosecution's case to meaningful adversarial testing," amounting to "a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable." *Id*. at 659. The third circumstance arises when, "although counsel is available to assist the accused during trial, the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate." *Id*. at 659-660.

Defendant first contends that he was constructively denied assistance of counsel because, following the death of his retained counsel, substitute appointed counsel failed to contact or communicate with defendant for months before trial. A defendant possesses a constitutional right to consult with counsel and prepare a defense as "the Supreme Court [of the United States] has repeatedly made clear that there is a duty incumbent on trial counsel to conduct pre-trial investigation, [thus,] it necessarily follows that trial counsel cannot discharge this duty if he or she fails to consult with his or her client." *People v Hieu Van Hoang*, 328 Mich App 45, 59; 935 NW2d 396 (2019) (quotation marks and citation omitted).

---

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

From the initiation of the lower court proceedings until March 25, 2023, defendant was represented by retained counsel Gary W. Jones. The last hearing where counsel Jones appeared occurred on September 14, 2022, during which the parties determined that a bench trial solely involving defendant would occur on May 11, 2023, as codefendant Grove initially opted for a jury trial. On May 11, 2023, the trial court held a pretrial hearing, rather than the originally scheduled bench trial, because defendant was absent. Appointed counsel Alisa Martin provided that she was unsure why defendant was absent, as she was recently appointed after the passing of counsel Jones, and counsel Martin possessed "zero information" regarding defendant's address or contact information. The court clarified that upon receiving notification of counsel Jones's death, it requested appointed counsel for defendant, and counsel Martin failed to appear at the April 11, 2023 pretrial hearing.[3] The trial court issued a capias warrant against defendant for his absence. On May 24, 2023, the court entered an order substituting counsel Maria Mannarino for appointed counsel Martin.

On June 5, 2023, the prosecution filed an emergency motion for adjournment, contending that defendant's newly retained counsel would likely request an adjournment for sufficient time to prepare for trial. On June 7, 2023, the trial court held an arraignment regarding defendant's failure to appear for the initially scheduled bench trial proceeding; counsel Mannarino appeared. She asserted that as defendant lived in Texas, he previously relied on counsel Jones to advise him when he needed to appear, and such communication ceased after counsel Jones's death, resulting in defendant's absence at the May 11, 2023 hearing. The court responded that defendant was present during the September 14, 2022 pretrial hearing, during which the parties set the original bench trial date, and there was no indication that that date would be altered. Counsel Mannarino expressed that after the trial court issued the capias warrant, defendant immediately contacted defense counsel to address the matter, and he arranged to travel from Texas to Michigan to appear for the rescheduled June 12, 2023 bench trial. Counsel Mannarino further asserted that she was prepared for the bench trial proceedings, and there was no need for any further continuances or adjournments.

During the June 7, 2022 hearing, the prosecution replied that, while it filed an emergency motion for an adjournment based on prior conversations with defense counsel, it believed such concerns were moot based on counsel Mannarino's statements. The court determined it would terminate the capias warrant against defendant considering the circumstances. Counsel Mannarino further provided that she discussed the prosecution's previous plea offer with defendant, but defendant wished to proceed to trial. On June 7, 2023, the final conference form was signed by all parties, confirming the bench trial date for June 12, 2023, which transpired as scheduled.

---

[3] We note that counsel Jones, during the September 14, 2022 hearing, indicated that he did not wish to participate in the April 11, 2023 pretrial hearing; he wished to proceed straight to the bench trial as soon as possible. The register of actions does not contain any entry that a pretrial hearing was held on April 11, 2023. A pretrial hearing was apparently held on April 21, 2023, but it was not placed on the record.

Defendant was deprived of counsel during a critical stage of the lower court proceedings—the period of pretrial preparations after the passing of counsel Jones. See *id*. at 60 ("Depriving a defendant of the ability to communicate with his or her attorney during pretrial preparations—a critical stage of the proceedings—prevents the attorney from fulfilling the attorney's duty to investigate and prepare possible defenses."). However, the presumption of prejudice and form of relief contemplated in *Cronic* are inapplicable here. "Although *Cronic* appears to require that the complete absence of counsel at a 'critical stage' warrants an irrebuttable presumption of prejudice, the [United States] Supreme Court nonetheless has applied harmless-error review when defense counsel was absent at a critical stage" in subsequent matters. *People v Murphy*, 481 Mich 919, 921 (2008) ( MARKMAN, J., concurring).[4] For example, in *Woods v Donald*, 575 US 312, 318; 135 S Ct 1372; 191 L Ed 2d 464 (2015), the United States Supreme Court opined, "[w]ithin the contours of *Cronic*, a fair[-]minded jurist could conclude that a presumption of prejudice is not warranted by counsel's short absence during testimony about other defendants where that testimony was irrelevant to the defendant's theory of the case." The *Woods* Court clarified, "*Cronic* applies in 'circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified[;]' " thus, "[t]he Michigan Court of Appeals' refusal to apply it to these circumstances was not the 'extreme malfunction' required for federal habeas relief." *Id*. at 318-319 (citations omitted).

A second illustration is provided in *Satterwhite v Texas*, 486 US 249, 252, 257-258; 108 S Ct 1792; 100 L Ed 2d 284 (1988), when the United States Supreme Court examined whether defense counsel's absence during the defendant's psychiatric examination, a critical stage of the lower court proceedings, constituted the type of Sixth Amendment violation warranting automatic relief. The *Satterwhite* Court determined that automatic relief was only justified in "cases in which the deprivation of the right to counsel affected—and contaminated—the entire criminal proceeding." *Id*. at 257. As the Sixth Amendment violation was "limited to the admission into evidence of [the examining psychiatrist's] testimony," the deprivation of counsel did not contaminate the entire criminal proceeding; consequently, automatic relief was not warranted. *Id*. at 257-258. The United States Supreme Court further opined that when the absence of counsel failed to contaminate the entire proceeding, a reviewing court should first evaluate whether the error was harmless. *Id*. Our Supreme Court reached a similar conclusion in *People v Lewis*, 501 Mich 1, 5-6; 903 NW2d 816 (2017), in evaluating whether a defendant's deprivation of counsel at a preliminary examination was subject to automatic reversal, as detailed in *Cronic*, or whether the matter was subject to harmless-error review. The *Lewis* Court resolved that the United States Supreme Court "plainly held [in *Coleman v Alabama*, 399 US 1, 11; 90 S Ct 1999; 26 L Ed 2d 387 (1970),] that the deprivation of counsel at a preliminary examination is subject to harmless-error review under the federal Constitution[,]" and as *Coleman* was not expressly overruled, it governed the matter as opposed to *Cronic*. *Lewis*, 501 Mich at 9.

As opined by Justice Markman, "[w]ere this Court to conclude that every absence of counsel at a critical stage requires automatic relief for a defendant, such a result would give no effect to *Satterwhite*," or other caselaw of the United States Supreme Court that concluded

---

[4] "Supreme Court orders that include a decision with an understandable rationale establish binding precedent." *People v Giovannini*, 271 Mich App 409, 414; 722 NW2d 237 (2006).

automatic reversal was improper considering the nature of the alleged Sixth Amendment violation. *Murphy*, 481 Mich at 922 (MARKMAN, J., concurring). We agree with Justice Markman's resolution "harmonizing" *Cronic* and matters like *Satterwhite*, providing:

> The only method to harmonize these cases, and to give reasonable effect to both, is to understand *Satterwhite* as carving out an exception to the general rule of *Cronic*, which itself carves out an exception to *Strickland*. That is, a reviewing court should first determine whether the effect of the absence of counsel can be sufficiently separated from the entire proceeding, enabling an appellate court to meaningfully compare the flawed proceeding with an unflawed proceeding. If the effect cannot be sufficiently separated, then defendant is entitled to an irrebuttable presumption of prejudice under *Cronic*; if the effect can be sufficiently separated, then it may be reviewed for harmless error under *Satterwhite*. [*Id*.]

Notably, "every federal circuit court of appeals has stated, post-*Cronic*, that an absence of counsel at a critical stage may, under some circumstances, be reviewed for harmless error." *Id*. at 923.

In the instant matter, the consequence of the absence of counsel may be sufficiently separated from the entire proceeding to permit this Court to consciously distinguish between the flawed proceeding and the unflawed proceeding, much like the circumstances examined in *Woods* and *Satterwhite*. While it is unclear from the evidentiary record exactly when, between March 25, 2023 and May 11, 2023, counsel Martin was appointed to represent defendant, the register of actions indicates that no further hearing, conference, or court proceeding was held between the September 14, 2022 hearing, during which the parties determined the initial date for the bench trial, and the May 11, 2023 hearing. We do not diminish the significance of counsel Martin's lack of communication with defendant after her appointment, particularly as the bench trial was originally set for May 11, 2023. Had the bench trial proceedings commenced as originally scheduled, or if counsel Martin continued to represent defendant without further contact, then we would definitively state that defendant was constructively denied assistance of counsel under circumstances that warrant automatic reversal. See *Hieu Van Hoang*, 328 Mich App at 61 ("[w]hen counsel is appointed but never consults with his client and is suspended from practicing law for the month preceding trial, and the court acquiesces in this constructive denial of counsel by ignoring the defendant's repeated requests for assistance, there is a violation of the defendant's constitutional right to counsel" as contemplated in *Cronic*) (quotation marks and citation omitted).

However, defendant retained counsel Mannarino on May 24, 2023, approximately three weeks before the rescheduled bench trial, to resolve any grievances concerning counsel Martin and to allow new counsel to investigate and prepare for trial. Furthermore, the capias warrant issued against defendant for his absence at the May 11, 2023 hearing was recalled by the trial court. Thus, considering the lack of activity in defendant's case between the passing of counsel Jones and the appointment of counsel Martin, the postponement of the bench trial, and the subsequent retention of counsel Mannarino, any error resulting from the denial of counsel during the pretrial phase was harmless beyond a reasonable doubt.

Defendant then contends that counsel Mannarino only had seven business days to investigate the underlying matter and prepare an adequate defense for trial, and she failed to request or agree to an adjournment of the scheduled trial. Defendant further argues that counsel

Mannarino's minimal preparation for trial resulted in her failure to subject the prosecution's case to meaningful adversarial testing. In *Bell v Cone*, 535 US 685, 696-697; 122 S Ct 1843; 152 L Ed 2d 914 (2002), the United States Supreme Court defined the failure to subject the prosecution's case to meaningful adversarial testing:

> When we spoke in *Cronic* of the possibility of presuming prejudice based on an attorney's failure to test the prosecutor's case, we indicated that the attorney's failure must be complete. We said "if counsel *entirely* fails to subject the prosecution's case to meaningful adversarial testing." *Cronic*, supra, at 659, 104 S Ct 2039 (emphasis added). Here, respondent's argument is not that his counsel failed to oppose the prosecution throughout the sentencing proceeding as a whole, but that his counsel failed to do so at specific points. For purposes of distinguishing between the rule of *Strickland* and that of *Cronic*, this difference is not of degree but of kind.

Stated alternatively, "[t]he *Cronic* test applies when the attorney's failure is *complete*, while the *Strickland* test applies when counsel failed at specific points of the proceeding." *Frazier*, 478 Mich at 244.

In this case, defendant broadly contends that because counsel Mannarino was allocated limited time to prepare for the bench trial, she was unable to properly challenge the prosecution's fundamental theory concerning the underlying charges against defendant. Defendant further asserts that he cannot be held culpable for his counsel's neglect to properly formulate a defense, including defense counsel's failure to seek witnesses to verify defendant's narrative of the incident, primarily the fact that defendant was unarmed. The plain language of *Cronic* expressly undermines defendant's position. The *Cronic* Court provided that only an *entire* failure to subject a case to meaningful adversarial testing was sufficient to permit a court to relieve a defendant of the burden to establish that his or her counsel acted unreasonably and that the defendant was prejudiced. *Cronic*, 466 US at 659. The evidentiary record here indicates that the errors allocated to defense counsel maintain a greater resemblance to those traditionally challenged under *Strickland*.

First, despite defendant's assertions, counsel Mannarino was retained on May 24, 2023, as opposed to June 7, 2023, under the order for substitution entered by the trial court, providing counsel Mannarino with approximately three weeks to prepare for trial. Second, counsel Mannarino thoroughly cross-examined complainant regarding the subject incident and the admitted social media videos, she objected to the admission of the second video, and she prepared a comprehensive closing argument challenging the prosecution's narrative of the events. Counsel Mannarino also presented Detective Gambril as a witness to challenge complainant's testimony regarding whether defendant was armed during his pursuit of complainant. Accordingly, defendant's contentions regarding counsel Mannarino's trial strategy and her alleged failure to investigate appropriate witnesses are the type of errors that generally fall within the scope of *Strickland*. See *Bell*, 535 US at 686 ("The challenged aspects of counsel's performance—failing to adduce mitigating evidence and waiving closing argument—are plainly of the same ilk as other specific attorney errors subject to *Strickland*'s performance and prejudice components"); see also *People v McGhee*, 268 Mich App 600, 625-626; 709 NW2d 595 (2005) (applying *Strickland* to determine whether the defense counsel's failure to investigate was ineffective assistance).

As previously provided, for a defendant to succeed on an ineffective-assistance-of-counsel claim under *Strickland*, the defendant must show "(1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *Trakhtenberg*, 493 Mich at 51. "In examining whether defense counsel's performance fell below an objective standard of reasonableness, a defendant must overcome the strong presumption that counsel's performance was born from a sound trial strategy." *Id*. at 52. "Yet a court cannot insulate the review of counsel's performance by calling it trial strategy." *Id*. "Initially, a court must determine whether the 'strategic choices [were] made after less than complete investigation,' and any choice is 'reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.' " *Id*. (citation omitted).

"The inquiry into whether counsel's performance was reasonable is an objective one and requires the reviewing court to determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012) (quotation marks and citation omitted). "This standard requires a reviewing court to affirmatively entertain the range of possible reasons . . . counsel may have had for proceeding as they did." *Id*. (quotation marks and citation omitted). This Court will not substitute its own judgment for that of counsel or use the benefit of hindsight in assessing counsel's competence. *People v Unger*, 278 Mich App 210, 242-243; 749 NW2d 272 (2008). "The [e]ffective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Muniz*, 343 Mich App 437, 448; 997 NW2d 325 (2022) (quotation marks and citation omitted).

Defendant essentially contends that his trial counsel failed to adequately prepare for trial or investigate potential witnesses. "An attorney's decision whether to retain witnesses, including expert witnesses, is a matter of trial strategy." *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009). Defense counsel has a "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 US at 691. "A sound trial strategy is one that is developed in concert with an investigation that is adequately supported by reasonable professional judgments." *People v Grant*, 470 Mich 477, 486; 684 NW2d 686 (2004). Regarding prejudice, "[w]ithout some indication that a witness would have testified favorably, a defendant cannot establish that counsel's failure to call the witness would have affected the outcome of his or her trial." *People v Carll*, 322 Mich App 690, 703; 915 NW2d 387 (2018). While defendant advances that counsel Mannarino failed to adequately investigate the underlying matter in the three weeks preceding trial, counsel Mannarino thoroughly examined complainant, reviewed the video exhibits presented by the prosecution, highlighted discrepancies in complainant's testimony in her closing argument, and presented a witness to corroborate defendant's narrative of the incident. See *Payne*, 285 Mich App at 189 ("the record reveals that defense counsel was prepared for trial, displayed an adequate knowledge of the evidence, and was fully prepared to cross-examine the prosecution's witnesses. We cannot conclude that counsel's performance in this regard fell below an objective standard of reasonableness").

Defendant additionally argues that counsel Mannarino neglected to secure any witnesses to challenge complainant's testimony, and defendant provided the affidavit of Shadymond Henderson with his motion for a new trial to support this contention. This Court has broadly determined that "[d]ecisions regarding what evidence to present and whether to call or question

witnesses are presumed to be matters of trial strategy, and this Court will not substitute its judgment for that of counsel regarding matters of trial strategy." *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2002). The Henderson affidavit detailed that on June 22, 2019, Henderson was with her boyfriend, Jalen Youngblood, at the car wash, when she saw defendant and complainant at approximately 7:00 p.m., and complainant was running. Henderson asserted that (1) she did not hear any gunshots, (2) Youngblood drove to a car wash facility that was approximately one mile away, where complainant asked Youngblood for a ride to his residence, (3) complainant stated that he was chased by seven people who wanted to fight him, but complainant did not mention any firearms, and (4) after Youngblood dropped off complainant at his residence, she did not further interact with complainant.

Defendant fails to establish how the proposed testimony would have adequately challenged the notion that defendant was armed, as Henderson does not affirmatively state that defendant was not in possession of a firearm; rather, she asserts that she did not hear any gunshots. Furthermore, Detective Gambril testified that emergency services did not receive any phone calls regarding any gun shots heard at the car wash during the incident. Therefore, we cannot conclude that defense counsel's performance fell below an objective standard of reasonableness because defendant failed to establish the factual predicate for his claim. See *People v Muhammad*, 326 Mich App 40, 63; 931 NW2d 20 (2018) (because the "defendant bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim.") (quotation marks and citation omitted).

To the extent that counsel Mannarino's performance was deficient, defendant has failed to establish that "but for counsel's deficient performance, a different result would have been reasonably probable." *People v Armstrong*, 490 Mich 281, 290; 806 NW2d 676 (2011). The trial court fundamentally cited defendant's social media videos to establish the underlying elements of felonious assault, noting that the first video posted by defendant depicted him chasing complainant while advancing derogatory statements, and the second video portrayed defendant, with a firearm, stating that he wished that he had the opportunity to "pop" complainant. Complainant's testimony corroborated this narrative. Thus, even if a proposed witness testified that he or she did not hear any gunshots or did not see defendant with a firearm, the evidentiary record plainly indicates otherwise. See *Carll*, 322 Mich App at 703 ("Without some indication that a witness would have testified favorably, a defendant cannot establish that counsel's failure to call the witness would have affected the outcome of his or her trial."). As defendant has failed to establish a viable claim of ineffective assistance of counsel under *Cronic* or *Strickland*, he is not entitled to relief.

## III. INCONSISTENT VERDICTS

Defendant argues that the trial court rendered inconsistent verdicts when it convicted defendant of felonious assault and felony-firearm while acquitting codefendant Grove of identical offenses. We disagree.

In general, an issue is preserved for appeal if it was raised in or decided by the trial court. *Glasker-Davis v Auvenshine*, 333 Mich App 222, 227; 964 NW2d 809 (2020). Because the matter of whether the trial court issued inconsistent verdicts during the subject bench trial was not raised or addressed during the lower court proceedings, this issue is unpreserved for appellate review. See *People v Montague*, 338 Mich App 29, 50; 979 NW2d 406 (2021) ("Defendant's argument

that the trial court rendered inconsistent verdicts was raised for the first time in defendant's brief on appeal. Therefore, the issue is not preserved.").

"[W]hen issues are unpreserved, this Court must review the unpreserved claim for plain error affecting defendant's substantial rights." *People v Serges*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 355554); slip op at 15 (quotation marks and citation omitted). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Stokes*, 333 Mich App 304, 307; 963 NW2d 643 (2020) (quotation marks and citation omitted). "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id.* (quotation marks and citation omitted). "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id.* (quotation marks and citation omitted).

While a jury's verdicts may be logically inconsistent and ambiguous, when the trial court is "sitting as the trier of fact, [it] may *not* enter an inconsistent verdict." *People v Ellis*, 468 Mich 25, 26; 658 NW2d 142 (2003) (quotation marks and citations omitted). An inconsistent verdict is one that cannot be "rationally reconciled" with the trial court's underlying factual findings. *Id.* at 27. The elements of felonious assault are: "(1) an assault, (2) with a dangerous weapon, and (3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery." *People v Nix*, 301 Mich App 195, 205; 836 NW2d 224 (2013) (quotation marks and citation omitted). "An assault may be established by showing either an attempt to commit a battery or an unlawful act that places another in reasonable apprehension of receiving an immediate battery." *People v Starks*, 473 Mich 227, 234; 701 NW2d 136 (2005). "The elements of felony-firearm are (1) the defendant committed a felony and (2) possessed a firearm while doing so." *People v Jackson*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 366078); slip op at 4.

Defendant and codefendant Grove were each charged with one count of felonious assault and one count of felony-firearm for their purported interaction with complainant at the car show. Defendant was further charged with one count of felonious assault and one count of felony-firearm for his conduct toward Bell. Following a joint bench trial, defendant was acquitted of the charges pertaining to Bell; however, defendant was convicted of felonious assault and felony-firearm because of his pursuit of complainant with a firearm. Codefendant Grove was acquitted of the offenses pertaining to complainant. In issuing its not guilty verdict concerning codefendant Grove, the trial court opined that there was insufficient evidence to convict him because (1) the evidentiary record did not establish that codefendant Grove advanced any questionable statements or conduct towards complainant or Bell after codefendant Grove allegedly fired his gun, (2) complainant's testimony indicated that codefendant Grove approached Bell, as opposed to complainant, and (3) complainant expressed that defendant, while armed, was the sole party pursuing complainant as he ran away.

In returning its guilty verdict for defendant, the court stated that complainant's testimony regarding the underlying incident was credible and complainant's actions were reasonable in light of the circumstances. The trial court deemed part of defendant's testimony credible, particularly the portions corroborating complainant's narrative, and defendant plainly provided a motive for

-10-

his conduct towards complainant—defendant testified that he had "beef" with complainant. The court further expressed that while the first admitted social media video did not depict defendant with a firearm, the clip portrayed defendant pursuing complainant while stating, "He is a b****. He's running. Got him running to Dexter. Look at him." The trial court clarified that the second admitted video captured defendant and codefendant Grove with firearms while the two were seated in a car; however, "the court is more focused [sic] on the defendant's words because as the parties are aware, a defendant's intent may be inferred by what he said, what he did, and how he did it." The court stated:

> So video number 2 you can hear [defendant] stating, "Sick. I couldn't catch his a**. I'm too fat to be chasing his a**. I should have popped his a**. I should have popped his little b**** a**. It was too many people out there man. Mad that I couldn't catch his a**."

> So based on [defendant's] words the court may infer that he was armed, coupled with [complainant's] testimony that he had a gun, and it's clear that the videos were part of a series, and folks were commenting as it was streaming.

The trial court concluded, in light of the admitted video evidence and the presented testimonies, that the prosecution established beyond a reasonable doubt that defendant perpetrated a felonious assault against complainant, warranting a conviction of felonious assault and felony-firearm.

Defendant does not point to a particular inconsistent factual finding, but rather, to varying verdicts as to codefendants based on the same evidence. An acquittal is not a factual finding, but a determination that the evidence was insufficient to persuade the factfinder that all of the elements of the offense were established beyond a reasonable doubt to the gratification of the factfinder. See *People v Brown*, 339 Mich App 411, 422; 984 NW2d 486 (2021) (acquitted conduct "is a concept based not on the existence of sufficient evidence, but rather one based on the absence of such evidence; it is a concept borne not of logical deduction nor evidentiary inference, but rather it is a legal term of art based on evidentiary absence or negation."). Thus, an inconsistent verdict among jointly-tried codefendants could arise only when there is an essential factual link between the guilt of two codefendants, and not as in this case, when there is essentially only testimony from one witness that codefendants engaged in similar conduct. To that notion, defendant advances that the prosecution's fundamental theory to support the underlying charges was that defendant and codefendant Grove each brandished and fired their guns in the air before approaching complainant, and the court determined the facts were insufficient to conclude that codefendant Grove's conduct amounted to felonious assault and felony-firearm. However, the evidentiary record indicates otherwise.

The trial court recognized that complainant testified that both defendant and codefendant Grove, after individually discharging their respective firearms, walked towards complainant's car, where he and Bell were located. The court then distinguished between the evidence presented to determine each person's intent and whether each party was definitively armed while approaching complainant and Bell. The trial court resolved, as provided previously, that defendant's intent may be gleamed from the social media videos he posted, in which defendant made statements regarding "popping" complainant and was portrayed pursuing complainant. The quantum and quality of evidence against defendant was greater than that which inculpated codefendant Grove, particularly

-11-

considering there was admitted video evidence capturing defendant's threatening and derogatory statements against complainant and his pursuit of complainant. Furthermore, complainant repeatedly reiterated that defendant was the sole party chasing him after the parties' initial interaction at the car show, and defendant followed complainant for approximately three blocks, all while filming the matter and allegedly holding a firearm. Thus, when viewed with the required deference to the factfinder's assessment of credibility and the weight to be given to the evidence, there is nothing factually or logically inconsistent with the trial court's verdicts that warrant reversal. See *Avery v State*, 345 Mich App 705, 716; 9 NW3d 115 (2023) ("An appellate court will give deference to the trial court's superior ability to judge the credibility of the witnesses who appeared before it.") (quotation marks and citation omitted).

Affirmed.

/s/ Kathleen Jansen
/s/ Michelle M. Rick
/s/ Sima G. Patel